## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GREGORY ZAGEL**, | Case No. 3:14-cv-440-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

Gregory Zagel, 5041 D. Foothills Rd., Lake Oswego, OR 97034, Plaintiff *Pro Se*

Billy J. Williams, Acting United States Attorney, and Janice E. Hebert, Assistant United States Attorney, U.S. Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jordan D. Goddard, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075

**Michael H. Simon, District Judge.**

Mr. Gregory Zagel seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB"). For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

On December 14, 2010,[1] Mr. Zagel filed an application for DIB alleging that he became disabled on July 27, 1991.[2] AR 109-112. Mr. Zagel was born in 1955, was 36 years old at the

---

[1] The ALJ notes Mr. Zagel's application date as November 24, 2010. AR 11. The application in the record, however, is dated December 14, 2010.

[2] Mr. Zagel previously filed an application for DIB and Supplemental Security Income ("SSI") on February 13, 2008. AR 48. Mr. Zagel's application for SSI was granted and his application for DIB was denied. AR 31, 48. A previous social security administration

alleged disability onset date, and is currently 60 years old. AR 36. On August 2, 2012, a hearing

was held before an Administrative Law Judge ("ALJ"). AR 23-34. The ALJ issued a decision

finding Mr. Zagel was not disabled from the alleged onset date to June 30, 1995, the date last

insured. AR 11-17. On January 15, 2014, the Appeals Council denied Mr. Zagel's request for

review, making the ALJ's decision final and entitling Mr. Zagel to review in this Court. AR 1-5;

42 U.S.C. § 405(g).

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

---

adjudication generally has a preclusionary effect with respect to the findings of the
administrative law judge, unless there is new and material evidence on the issue. *See Chavez v.*
*Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) ("The principles of res judicata apply to administrative
decisions, although the doctrine is applied less rigidly to administrative proceedings than to
judicial proceedings."); *see also* 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1) (stating that res
judicata and collateral estoppel apply where the Commissioner has made a previous final
decision based "on the same facts and on the same issue or issues"). The documents relating to
Mr. Zagel's 2008 DIB application and its disposition, however, are not part of the record.
Further, the ALJ did not analyze whether Mr. Zagel's 2008 application precluded his 2010
application in its entirety or any specific issues argued by Mr. Zagel in his 2010 application, and
the Commissioner does not argue issue or claim preclusion with respect to Mr. Zagel's
December 14, 2010 DIB application. Thus, the Court finds that application is not precluded.

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
        significant mental or physical duties done or intended to be done for pay
        or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
        such work, she is not disabled within the meaning of the Act. 20 C.F.R.
        §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
        substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's
        regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
        impairment or combination of impairments is "severe" if it significantly
        limits the claimant's physical or mental ability to do basic work activities.
        20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
        this impairment must have lasted or be expected to last for a continuous
        period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
        claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
        §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
        impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the
        impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
        then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
        416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
        the listed impairments, the analysis continues. At that point, the ALJ must
        evaluate medical and other relevant evidence to assess and determine the
        claimant's "residual functional capacity" ("RFC"). This is an assessment
        of work-related activities that the claimant may still perform on a regular
        and continuing basis, despite any limitations imposed by his or her
        impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
        416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
        proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC
        assessment? If so, then the claimant is not disabled. 20 C.F.R.
        §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
        his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

PAGE 4 – OPINION AND ORDER

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one, the ALJ determined Mr. Zagel last met the insured status requirements of the Act on June 30, 1995 and found Mr. Zagel had not engaged in substantial gainful activity during the period from his alleged onset date of July 27, 1991, through his date last insured. AR 14-15.

At step two, the ALJ found Mr. Zagel had the following medically determinable impairments: back pain, knee pain, and leg pain resulting from post-accident fractures. AR 15. The ALJ found however, that through the date last insured, Mr. Zagel did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months; therefore, Mr. Zagel did not have a severe impairment or combination of impairments. AR 15. Based on these findings, the ALJ concluded that Mr. Zagel was not disabled at any time from July 27, 1991, through June 30, 1995. AR 17.

The ALJ also found that, despite some evidence that Mr. Zagel had initiated the process to file a claim for DIB in 1993, thereby potentially preserving a protective filing date, there was no evidence of a filed application for benefits. AR 12-13.

## DISCUSSION

The Commissioner identifies two potential issues Mr. Zagel appears to address in his *pro se* opening brief: (1) whether substantial evidence supports the ALJ's finding that Mr. Zagel did not prove he had a severe, medically determinable impairment or combination of impairments for a continuous twelve-month period prior to his date last insured; and (2) whether substantial evidence supports the ALJ's finding that Mr. Zagel did not complete an application for DIB in 1993. The Court also considers whether the Commissioner improperly failed to comply with Social Security Ruling ("SSR") 83-20, *available at* 1983 WL 31249.

## A.  Severe Impairment

At step two, the claimant bears the burden of showing the existence of a severe impairment or combination of impairments—medically determinable conditions that have more than a minimal effect on the claimant's ability to perform work-related activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Tackett*, 180 F.3d at 1098; *Hoopai v. Astrue*, 499 F.3d 1071, 1075-76 (9th Cir. 2007). "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings," and cannot be established on the basis of a claimant's symptoms alone. 20 C.F.R. § 404.1508.

The Social Security regulations and rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the regulations, "an impairment . . . is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example

"walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R.
§ 404.1521(b). An impairment or combination of impairments can be found "not severe" only if
the evidence establishes a slight abnormality that has "*no more than a minimal effect* on an
individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (emphasis in
original) (quoting SSR 85-28). The step-two inquiry is a *de minimus* screening device to dispose
of groundless claims. *Yuckert*, 482 U.S. at 153-54.

As noted, at step two the ALJ found Mr. Zagel had the following medically determinable
impairments: back pain, knee pain, and leg pain resulting from post-accident fractures. AR 15.
The ALJ concluded, however, that the combination of impairments did not significantly limit
Mr. Zagel's ability to perform basic work-related activities for 12 consecutive months and,
therefore, he did not have a *severe* combination of impairments. AR 15.

As the ALJ also noted and as the record indicates, Mr. Zagel was involved in a major car
accident in July 1991.[3] AR 209. Mr. Zagel spent several weeks in the hospital directly following
the accident. AR 27-28. He then had several hospital visits, long-term physical therapy, and other
medical treatment for his extensive injuries. AR 27-28. Mr. Zagel reported that he received State
of California Disability Insurance benefits from July 28, 1991, to July 28, 1992, and that he
received a substantial amount of money in a financial settlement from the accident that he relied
upon until he ran out of that money. AR 127, 205.

The ALJ based his step two findings on "minimal treatment records." AR 16. The ALJ
referenced a September 1991 x-ray that revealed mild lumbar degeneration. AR 16. The ALJ
noted that in October 1991, treating physician Thomas Franklin, M.D., wrote that Mr. Zagel

---

[3]In his Decision, the ALJ states that the accident occurred in September 1991. AR 16.
This statement is in error, as the record shows that the accident occurred on July 27, 1991. *See,
e.g.*, AR 209.

PAGE 7 – OPINION AND ORDER

would be disabled until February 1992 due to his July 1991 car accident. The accident caused fractures of the skull, the left femur, and the left patella. AR 16; AR 334. The ALJ afforded Dr. Franklin's analysis little weight, however, due to the lack of supportive treatment notes. AR 16.

The ALJ also stated that there are no follow-up records from Dr. Franklin. AR 16. To the contrary, Dr. Franklin wrote additional notes stating that Mr. Zagel would be unable to work for additional periods of time. In November 1992, Dr. Franklin opined that Mr. Zagel would be unable to work until February 1, 1993, and in February 1993, Dr. Franklin opined that Mr. Zagel would be unable to work "for the next 90 days." AR 338, 339.

The ALJ also cited a 1993 letter from examining physician Peter Coetzee, M.D. AR 16. At the hearing, Mr. Zagel testified that he traveled to South Africa in September 1992 to be examined by Dr. Coetzee, who was a "personal friend." AR 28, 234. In February 1993, Dr. Coetzee sent a letter to Mr. Zagel's attorney in which he opined that Mr. Zagel would be disabled on a permanent basis and would require a minimum of "several years . . . to even contemplate a return to the workforce." AR 234. As the ALJ noted, Dr. Coetzee expressed concern that Mr. Zagel's left iliotibial band was calcifying. AR 16. Although the ALJ did not specifically address it, Dr. Coetzee also raised concern about the possibility that one of Mr. Zagel's legs would be significantly shorter than the other, that there was significant damage to a lumbar disc, and that a knee or hip replacement might be necessary within the next three to five years. AR 234. The ALJ gave Dr. Coetzee's opinion little weight because of the lack of supporting objective findings, laboratory reports, or other treatment records describing the nature or duration of Mr. Zagel's condition. AR 16.

The ALJ noted that physical therapy records from December 1992 and February 1993 indicate Mr. Zagel had difficulty achieving tasks because his left leg went numb. AR 16, 330-33. Finally, the ALJ gave significant weight to the opinion of non-examining physician Mary Ann Westfall, M.D., who on March 28, 2011, determined there was insufficient evidence to find Mr. Zagel had severe impairments before the date last insured because Dr. Coetzee did not support his opinion with specific physical findings or limitations that would cause disability. AR 17; 51.

The ALJ did not address a 29-page document submitted by Mr. Zagel containing daily summaries of the physical difficulties he experienced from his injuries from August 12, 1991, through March 2, 1993. AR 160-89. Nor did the ALJ address a December 18, 1992, letter from Mr. Zagel to Dr. Bruce Adornato detailing nerve difficulties Mr. Zagel had experienced the previous three months. AR 190-91. While Mr. Zagel's letter references a future appointment with Dr. Adornato to confer on the issues raised, notably no medical records from Dr. Adornato appear in the record. AR 190. In fact, with the exception of the letters discussed above, there are no medical records whatsoever chronicling Mr. Zagel's treatment from the date of the accident through the date last insured.

The ALJ has a special duty to fully and fairly develop the record and ensure the claimant's interests are considered, regardless of whether the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty to develop the record is triggered when the evidence provided is ambiguous, or when the ALJ finds the record is inadequate for properly evaluating the evidence. *Id*. This duty may require the ALJ to obtain additional information, for example, by contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 404.1512(d)-(e), 404.1519a. A claimant

does not have "an affirmative right to have a consultative examination performed by a chosen specialist." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001). The Commissioner may, however, order an examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b); *see also* 20 C.F.R. §§ 404.1517, 404.1527(c)(3). The court may reverse and remand the Commissioner's final decision where the court concludes that the ALJ should have ordered a consultative examination. *See Reed*, 270 F3d at 843–45.

The record of Mr. Zagel's medical symptoms, diagnoses, treatment, and physical limitations from the alleged onset date of July 27, 1991, through his last insured date of June 20, 1995, was sufficiently ambiguous to trigger the ALJ's duty to develop it further by either contacting the treating and examining sources, scheduling a consultative examination, or consulting a medical expert. If those sources support a finding that Mr. Zagel suffered an impairment or combination of impairments that limited Mr. Zagel's ability to perform basic work activities, then the ALJ must proceed past step two and complete the evaluation to determine whether Mr. Zagel was disabled during the time period in question.

## B.  SSR 83-20

SSR 83-20 requires, in relevant part,

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.
>
> * * *
>
> *Precise Evidence Not Available—Need for Inferences*
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in

the particular case. This judgment, however, must have a
legitimate medical basis. At the hearing, the administrative law
judge (ALJ) should call on the services of a medical advisor when
onset must be inferred. If there is information in the file indicating
that additional medical evidence concerning onset is available,
such evidence should be secured before inferences are made.

If reasonable inferences about the progression of the impairment
cannot be made on the basis of the evidence in file and additional
relevant medical evidence is not available, it may be necessary to
explore other sources of documentation. Information may be
obtained from family members, friends, and former employers to
ascertain why medical evidence is not available for the pertinent
period and to furnish additional evidence regarding the course of
the individual's condition. . . . The impact of lay evidence on the
decision of onset will be limited to the degree it is not contrary to
the medical evidence of record.

* * *

The onset date should be set on the date when it is most reasonable
to conclude from the evidence that the impairment was sufficiently
severe to prevent the individual from engaging in SGA (or gainful
activity) for a continuous period of at least 12 months or result in
death. Convincing rationale must be given for the date selected.

SSR 83-20.

The Ninth Circuit has "explained this ruling to mean that '[i]n the event that the medical

evidence is not definite concerning the onset date and medical inferences need to be made,

SSR 83–20 requires the [ALJ] to call upon the services of a medical advisor and to obtain all

evidence which is available to make the determination.'" *Sam v. Astrue*, 550 F.3d 808, 810 (9th

Cir. 2008) (alterations in original) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th

Cir. 1991)). To trigger the procedures required in SSR 83–20, either the ALJ must make an

explicit finding of disability or the record must contain substantial evidence showing that the

claimant was disabled at some point after the date last insured, thus raising a question of onset

date. *Id.* at 810-811. Here, the record shows that Mr. Zagel has been found to be disabled and is

receiving SSI benefits. Additionally, he was found to be disabled for at least some period in the

early 1990s after his alleged onset date, and received disability payments from the State of

California. Thus, the ALJ erred by failing to comply with the requirements of SSR 83-20.

## C. 1993 DIB Application Status

Mr. Zagel also disputes the ALJ's finding that Mr. Zagel did not complete an application

for DIB in 1993. At the hearing on August 2, 2012, Mr. Zagel testified that he believed he had

filed an application for Social Security DIB in 1993. AR 27. The Social Security Agency,

however, has no record of Mr. Zagel filing an application for disability benefits in 1993. AR 12,

32, 37, 48.

"In order to receive disability benefits, a person must apply for a period of disability."

*Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1459-60 (9th Cir. 1995) (citing 42

U.S.C. § 416(i)(2)(B); 20 C.F.R. § 404.603). The Social Security Administration ("SSA") will

consider an application a claim for benefits upon the condition, *inter alia*, that it must be filed

"on a prescribed form, as stated in [20 C.F.R.] § 404.611." 20 C.F.R. § 404.610(a). Under

§ 404.611(a), a claimant "must apply for benefits on an application that we prescribe." 20 C.F.R.

§ 404.611(a).

Mr. Zagel, or someone on Mr. Zagel's behalf, completed a Disability Report in 1993.

AR 202-07. Mr. Zagel also apparently made an appointment at an agency field office to

complete an application. AR 201. An appointment confirmation dated February 24, 1993, from

the SSA references "Date of Claim: February 3, 1993." AR 226. The reference to "date of claim"

appears, however, to reflect the date Mr. Zagel contacted the SSA to set up an appointment to

complete his application. AR 201 (telephone appointment confirmation form dated February 3,

1993, stating "[t]hank you for contacting us for a teleclaim appointment with our office. This is

confirmation of the date and time of your teleclaim appointment"). A 2010 letter from the SSA

to Mr. Zagel also references a "1993 claim," but there is no indication that the agency employee who drafted the letter actually confirmed that an application was filed in 1993. AR 222.

Mr. Zagel also signed a release form in 1993 authorizing his accountant to access his Social Security records. AR 225. Mr. Zagel submitted additional evidence to this Court in the form of a 1992 letter from his former employer stating they had sent employment data to the agency and a 1993 release form authorizing his attorney to access his Social Security records. Dkt. 27-2 at 5, 17.[4] Mr. Zagel also submitted a copy of the first page of his 1993 1040 tax return, which indicated receipt of $5,771 in "Social Security Benefits." Dkt. 27-1 at 14.[5] As Mr. Zagel's attorney acknowledged at the ALJ hearing, however, it is likely that in filing his tax form Mr. Zagel conflated his California state disability benefits with Social Security benefits.

Although Mr. Zagel established that he had the intent to file a claim in 1993, and took some steps in that direction, the evidence does not establish that he actually filed a signed application with the SSA. In the absence of proof of an acceptable application filed with the SSA pursuant to agency rules, the ALJ did not err in finding that Plaintiff failed to establish a 1993 DIB claim for benefits. *See Patterson v. Astrue*, 2012 WL 1252653, *6 (W.D. Wash. Apr. 12, 2012) (finding that the claimant failed to establish that an application for DIB was filed with the SSA as prescribed by rule even though the claimant had expressed her intent to establish eligibility for such benefits and the ALJ postponed the hearing so that a medical expert could

---

[4] In his Reply Brief, Mr. Zagel asserts he completed a "Social Security application form." Upon review, however, the form attached as an exhibit to his Reply Brief is the same Disability Report previously provided to the ALJ.

[5] Both the release to Mr. Zagel's attorney and the 1993 tax return were discussed by the ALJ in his opinion. AR 12.

attend to address her DIB claim because there was a substantial period of time between the alleged onset date and the application for disability).[6]

Mr. Zagel's failure to show that he completed an application in 1993, prior to the last insured date of June 30, 1995, does not preclude him from pursuing the current application to adjudicate his alleged disability at that remote time. If Mr. Zagel is successful in his current application, DIB "may be paid for as many as 12 months before the month" his 2010 DIB application was filed.  SSR 83-20.[7]

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

 **IT IS SO ORDERED**.

DATED this 29th day of September, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[6] In any event, had Mr. Zagel properly filed a DIB claim in 1993 and, presumably, obtained an adverse result, it does not appear that an attempt to re-open the claim in the current proceeding could have succeeded. *See* 20 C.F.R. § 404.988(a)-(b) (the Commissioner may reopen and revise an otherwise final and binding decision within 12 months of the date of the notice of the initial decision "for any reason," and within four years of the date of the notice of the initial determination if the Commissioner finds "good cause" as defined in § 404.989). Mr. Zagel did not initiate these proceedings until December 14, 2010, well beyond the four-year limitation.

[7] The ALJ may also, however, consider whether, if Mr. Zagel was disabled prior to the last date insured, the evidence supports a finding of "medical improvement" before the date of Mr. Zagel's 2010 DIB application, such that Mr. Zagel could have engaged in substantial gainful activity. *See* 20 C.F.R § 404.1594.